ALICE APOSTOLICO AND THE CLERICAL AND STENO-GRAPHIC EMPLOYEES, ESSEX COUNTY PROSECU-TOR'S OFFICE AND THE PROSECUTOR'S DETECTIVES AND INVESTIGATORS ASSOCIATION OF ESSEX COUNTY, PLAINTIFFS-RESPONDENTS AND CROSS-AP-PELLANTS, v. THE COUNTY OF ESSEX, A BODY POL-ITIC OF THE STATE OF NEW JERSEY AND THE ESSEX COUNTY BOARD OF FREEHOLDERS, DEFEND-ANTS-APPELLANTS AND CROSS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 25, 1976—Decided June 16, 1976.

Before Judges BISCHOFF, BOTTER and GAULKIN.

*Mr. Francis Patrick McQuade* argued the cause for appellants.

*Mr. Lawrence A. Whipple, Jr.* argued the cause for respondents and cross-appellants Apostolico and the Clerical and Stenographic Employees (*Messrs. Zazzali & Zazzali,* attorneys; *Mr. Andrew F. Zazzali, Jr.* on the brief).

*Mr. Philip J. Mylod* argued the cause for respondent and cross-appellant Prosecutor's Detectives and Investigators Association of Essex County.

PER CURIAM. Defendants appeal from an order requiring the parties to submit this dispute to the Public Employment Relations Commission (PERC) for binding arbitration. The dispute concerns plaintiffs' claims for compensation for the one-half hour extension of their work day ordered by the Essex County Prosecutor to meet the change in court hours effective January 31, 1972. As a result the prosecutor required employees to report to work from 8:30 A.M. instead of 9:00 A.M. Plaintiffs assert that the normal working hours

theretofore were 9:00 A.M. to 4:00 P.M. Essex County refused to compensate them for the change in working hours.

An appeal was taken to the Civil Service Commission which held that the extension of the work day without additional compensation was a reduction without good cause, contrary to *N. J. S. A.* 11:22–38. The determination was reversed on appeal to this court. *Prosecutor's Detectives & Investigators Ass'n v. Hudson County Bd. of Chosen Freeholders,* 130 *N. J. Super.* 30, certif. den. 66 *N. J.* 330 (1974). The court held that the change in hours affecting employees indiscriminately was not a "reduction" in salary or status cognizable by the Civil Service Commission within the contemplation of *N. J. S. A.* 11:22–38. Rather, it viewed the controversy as one over terms and conditions of employment which should be negotiated by the parties. "If an impasse is reached, either party may seek the aid of the Public Employment Relations Commission to assist in effecting a *voluntary* resolution." 130 *N. J. Super.* at 45, (Emphasis added.) The opinion also referred to other possible judicial avenues of relief, including court compulsion, if the parties fail to negotiate in good faith.

In saying that the dispute should be negotiated, the court did not imply any position on the merits of the claim. It merely recited the contention of the employees that the 9:00 A.M. starting time was an "implied term of employment," and the contention of defendants that the hours of work were to be determined by each department head. *Id.* at 47. The employment agreement between the county and the prosecutor's detectives and investigators covering the period from April 1, 1970 to March 31, 1972 did not specify the hours of employment; it fixed annual salaries and provided that, "in view of the within salary adjustments, no employee shall make any claim for overtime payment." It did not provide for arbitration of disputes. There was no written agreement with the clerical and stenographic employees.

After denial of a petition for certification, 66 *N. J.* 330 (1974), plaintiffs requested the Essex County Board of Freeholders to negotiate the dispute. Although there were several meetings with county representatives, and with the board of freeholders at an executive session, the board of freeholders ultimately rejected the claim for back pay. The reason given was:

> The Board of Chosen Freeholders has continually indicated to the bargaining employees unit involved that the County would not compensate them for the half hour primarily because the Prosecutor's Office is ostensibly a twenty-four hour operation, has no provisions for overtime and furthermore, it is under the jurisdiction of the court and is subject to office hours based upon those of the court.

Plaintiffs filed a complaint in the Chancery Division in May 1975 and, by order dated June 18, 1975, defendants were directed: to commence negotiations "on the question of adequate compensation to those employees in the Essex County Prosecutor's. Office whose work day was extended"; to designate agents with "full authority" to negotiate, and to "attempt to meet at least once a week." In August the board of freeholders designated Herbert Gladstone, Personnel Director of Essex County, to represent them. A meeting was held on August 13 and Gladstone indicated he would report plaintiffs' proposals to the board of freeholders at its September meeting. Another meeting was held on September 16 at which Gladstone conveyed the board of freeholders' position that no "new facts" had been presented which would warrant an offer of compensation for the extra hours of work.

Despite the pendency of this dispute, and these various proceedings, employment contracts with the county were entered into in 1973 and 1974, negotiated by the Prosecutor's Detectives and Investigators Association of Essex County as the representative of all county detectives and investigators. These contracts provided for increases in salary and contained the same provision as the 1970 contract, that

no employee would make any claim for overtime. The 1974 contract also provided for a cost of living adjustment. The 1973 and 1974 contracts did provide grievance procedures and arbitration of disputes regarding the interpretation and application of "a specific provision" of the contracts. See *N. J. S. A.* 34:13A–5.3 which authorizes the parties to provide for binding arbitration as a means of resolving disputes.

Contending that defendants did not negotiate in good faith, plaintiffs moved on September 26, 1975 for an order granting the following supplemental relief: (a) committing defendants to the county jail until they complied with the order of June 18, 1975 which compelled negotiation of the dispute; (b) fining defendants for each day of noncompliance; (c) ordering payment of counsel fees; (d) ordering binding arbitration, and (e) ordering other relief deemed just and equitable. In response, the trial judge on October 21, 1975 entered the order under appeal directing the submission of the dispute to PERC for binding arbitration. Plaintiffs have cross-appealed from the court's denial of incarceration and the imposition of fines as forms of relief, as well as the denial of counsel fees caused by defendants' intransigence.

The trial judge in a written opinion dated September 30, 1975 held:

The court is not willing at this juncture to ascribe bad faith to the defendants who refuse to make any counter offer other than to say "no" to plaintiffs' demands.

It is obvious that however one may characterize the negotiations between the parties, the same have broken down and the parties are at an impasse. I note in the decision of the Appellate Division of the Superior Court involving the instant matter the court said at 130 *N. J. Super.* 45: "If an impasse is reached, either party may seek the aid of the Public Employment Relations Commission to assist in effecting a voluntary resolution". Notwithstanding that passage from the upper court's opinion, plaintiffs seek an order compelling defendants to submit the issue to final, binding arbitration * * *.

*N. J. S. A.* 34:13A–5.1 provides for the resolution of various disputes relating to public employment by PERC in the Division of Public Employment Relations, Department of Labor and Industry. It also provides for the resolution of disputes in private employment by the Division of Private Employment Dispute Settlement and the State Board of Mediation. *N. J. S. A.* 34:13A–5.2 grants PERC the same powers possessed by the Mediation Board. *N. J. S. A.* 34:13A–6(b) authorizes PERC to act "to effect a voluntary resolution" when negotiations between a public employer and an exclusive representative concerning the terms and conditions of employment have reached an impasse. If mediation fails, PERC may recommend or invoke factfinding with recommendation for settlement. *N. J. S. A.* 34:13A–5.4(a)(5) prohibits employers from refusing to bargain in good faith with a majority representative over terms and conditions of employment. Cease and desist orders may be entered, under authority of *N. J. S. A.* 34: 13A–5.4(c) and orders for enforcement may be sought in the Appellate Division. *N. J. S. A.* 34:13A–5.4(f).

These provisions relating to unfair practices, such as not negotiating in good faith, were adopted after this dispute arose. *L.* 1974, *c.* 123. The Supreme Court has recently held that this law "procedurally has retroactive effect and applies to the pending and unresolved charges of unfair practices * * *." *Patrolmen's Benevolent Ass'n of Montclair v. Montclair,* 70 *N. J.* 130 (1976). Nevertheless, as noted above, the trial judge found that the board of freeholders were not guilty of bad faith in their refusal to make any counter-offer to plaintiffs' demands. See *H. K. Porter Co. v. NLRB,* 397 *U. S.* 99, 90 *S. Ct.* 821, 25 *L. Ed.* 2d 146 (1970); *Wal-lite Div. of United States Gypsum Co. v. NLRB,* 484 *F.* 2d 108, 111 (8 Cir. 1973); *cf. Lullo v. International Ass'n of Fire Fighters,* 55 *N. J.* 409, 440 (1970), as to the difference between the right of collective negotiations and the right of collective bargaining. In any event, it is clear that the dispute was one which should have

been brought directly to PERC as a matter of primary jurisdiction. *Patrolmen's Benevolent Ass'n of Montclair v. Montclair, supra; cf. Woodside Homes, Inc. v. Morristown*, 26 *N. J.* 529, 540–541 (1958). The nature of this dispute, unusual as it may be, is susceptible to the expertise and variegated adjustment mechanisms of PERC.

■ However, in referring the matter to PERC the trial judge erred in ordering binding arbitration. Binding arbitration can be invoked only upon agreement of the parties. *N. J. S. A.* 34:13A–7; see *Public Utility Construction & Gas Appliance Workers v. Public Service Electric & Gas Co.*, 35 *N. J. Super.* 414, 419 (App. Div.), certif. den. 19 *N. J.* 333 (1955). The refusal to agree to arbitrate a dispute cannot be "construed as a violation of the policy or purpose of this act" nor can the "failure or refusal to arbitrate constitute a basis for any action at law or suit in equity." *N. J. S. A.* 34:13A–7. The clerical and stenographic employees have not entered into a collective employment agreement with the county, and the agreement with the detectives and investigators in effect at the time the dispute arose did not provide for arbitration. Although their later agreements did contain an arbitration clause for disputes arising under a "specific provision" of such agreements, they were negotiated after the dispute arose and the new working hours had been established. No provision of the agreements fixed working hours. Moreover, plaintiffs have taken the position that the dispute did not arise under the new contracts. Thus, no basis existed for ordering binding arbitration.

■ The county asserts that by entering into these new agreements the detectives and investigators are estopped from claiming a salary adjustment for the hours worked during the pendency of the 1970 agreement in effect at the time the hours were changed. Therefore, they contend, there is nothing to negotiate. We reject this contention. In the first place, the agreements do not embrace the clerical and stenographic employees who are asserting a claim in these

proceedings. Moreover, it is clear that by pursuing a remedy during the time contracts were negotiated and signed the detectives and investigators did not intend to abandon their claim for a retroactive adjustment in salary. We do not decide whether plaintiffs who entered into collective employment agreements after 1972 can, nevertheless, assert a claim for additional compensation during the term of those agreements. This issue was not developed factually in a hearing below. It is an issue to be considered during the negotiating and mediating activities conducted by PERC.

The portion of the order below ordering the submission of the dispute to PERC is affirmed; in all other respects the order is reversed and vacated. We reject the contentions asserted on the cross-appeal and accordingly affirm the denial of other relief sought by plaintiffs. No costs on this appeal.